## Joe Bailey Hickman v. The State.

No. 20455.   Delivered June 14, 1939.
Rehearing Denied November 15, 1939.

The opinion states the case.

*H. A. C. Brummett,* of Dickens, and *Bradley & Wilson,* of Lubbock, for appellant.

*John A. Hamilton,* District Attorney, of Matador, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant received a verdict at the hands of the jury of five years imprisonment in the penitentiary for the crime of rape.

The facts show that appellant, a man thirty years of age, in company with his brother Melvin, his nephew Jack Hickman, and Retha Hickman, Jack's wife, drove up to the home of Kathleen Ragsdale, a sixteen year old girl,—the prosecutrix,—on a Sunday afternoon, and asked her to go riding with them in a one seated car. Kathleen, after having obtained her father's permission, got in the car with these Hickmans, and sat in appellant's lap. It appears that these parties drove aimlessly around hunting a negro ball game, and finally meeting up with some other person on the road, obtained a jug of wine, of which most of the parties partook rather freely, finally emptying the jug. It was the testimony of the prosecutrix that she eventually "passed out," and did not know what took place, until sometime after drinking the wine she found herself under a bridge on the road, and appellant was engaged in the act of intercourse with her without her consent; that she began fighting him, and that he struck her in the stomach, and she again became unconscious. The testimony further shows that sometime later, about 6:40 P. M., the prosecutrix appeared at the home of Richard Alexander and "slumped down" on his doorsteps in a hysterical condition. The prosecutrix was screaming and appeared to be frightened; she did not seem to know very much; she would scream and say that some one was after her; she was not able to stand up and walk normally; she was just terrified, and this condition lasted until a doctor came and gave her a hypo. The sleeve of her dress was torn, and her panties were dirty, and there was a secretion on the panties. Dr. Hughes gave her a hypo and then examined her body for bruises. There were bruises and skinned places on her shins and legs, and a scratched place on her face. These were minor bruises. On the lower part of her back there was a bruise about the size of a hand. Her private parts showed that she had had intercourse with some one. Her teddies were filthy, there was a secretion present. On the next day the doctor made a

digital examination of her private parts, and he extracted therefrom a rubber condrum filled with a secretion from a male organ. He thought her condition when he first saw her was caused by a combination of drink and excitement. He did not think that the bruises on her back could have been caused by her willingly entering into an act of intercourse. He did think that the muscles of her vagina were relaxed to. such an extent that in his opinion she had entered into other acts of intercourse.

Appellant, an ex-convict, offered the defense that this girl willingly entered into the act of intercourse with him, and he was unable to give any explanation of her subsequent conduct, other than that she was drunk. It seems that the prosecutrix finally got away from appellant and his brother out in a pasture some ten or twelve miles away from her home, and they drove off and left her there in her drunken and hysterical condition, and she next shows up at Mr. Alexander's house in the condition above described. This is enough of the sordid facts to show a basis for our rulings hereinafter.

Bill of exceptions No. 1 complains because the trial court allowed the witness Richard Alexander to testify that after the prosecutrix appeared at his door until she was given a hypo she kept up this raving and talking out of her head, and lasping into unconsciousness and coming out of her unconsciousness. We do not think this testimony was too far removed in point of time from the alleged offense. It was the same day, within a few hours at least of the time of the alleged rape, and it was corroboration of the prosecutrix's testimony of her condition at the scene of the act of intercourse. See Branch's Penal Code, p. 1002, Sec. 1785; also Rogers v. State, 63 S. W. (2d) 385, and cases there cited. It will be noted that the testimony goes alone to the condition of the girl and does not offer any statement made by her. The appellant's contention is that the girl had been engaged in a struggle with appellant's brother Melvin, after appellant's act of intercourse with her, and that her excited condition came about because of her after trouble with his brother. We are not allowed any proof of such second trouble this girl had with the brother, for we note that her voluntary statement that the next thing she remembered she found herself fighting with Melvin Hickman out in a pasture was objected to by appellant, and the court sustained such objection, which occurrence is the basis of bill of exceptions No. 4, on which we will

later write. It is sufficient to say that we see no error reflected in bill No. 1.

Bill of exceptions No. 2 complains of Mrs. Richard Alexander's testimony as to the girl's condition at the time she arrived at Mrs. Alexander's doorstep as follows:

"Q. (By district attorney) What condition was she in when she came to your front door? (referring to prosecutrix). A. She just slumped right in the front door.

"Q. Did she respond to your questions—would she answer your questions? A. No sir, not at that time, I would have to ask her two or three times.

"Q. Would she scream in response to questions you would ask her? A. Well, no sir, didn't seem like it; she was just terrified from some cause."

This testimony was offered for the same purpose as that shown in bill No. 1, and was objected to for the same reasons, and we rule upon this bill in the same way as our ruling on bill No. 1.

Bill of exceptions No. 3 relates to the witness Mrs. Alexander being allowed to give the following testimony: "I have seen a few drunk people. They talked various ways, some of them do, but I don't much believe she (prosecutrix) was drunk, she might have been." This answer was objected to as an opinion and a conclusion of the witness, voluntarily given. As to whether the statement was voluntarily made we have no means of knowing, there being no other testimony shown in this bill, and we can not tell whether this above quoted answer was in reply to a question or not. We do not look upon the answer complained of as very conclusive of anything. It seems to be but an impression of the witness, rather vague, but finally placing its weight upon the probability of the prosecutrix not being drunk. In any event we do not think the appellant would be harmed by the question being answered either way. Drunk or sober, the facts still remain that she was in a hysterical condition at such time, so Mr. and Mrs. Alexander said, and was so said to be by Dr. Hughes at the time he waited on her at the Alexander home.

Bill of exceptions No. 4, as prepared by appellant's attorneys, was not approved by the court, who prepared a bill himself, and we proceed to notice the court's bill. The gist of the complaint herein has been adverted to in what we wrote on bill No. 1, and relates to the fact of the prosecutrix

answering that the next thing she remembered after fighting with appellant under the bridge, that she was in the pasture and fighting with Melvin Hickman. It appears that appellant objected to this testimony, and his objection was sustained, although it was shown that appellant was also present at the time and place. The appellant also requested that the court declare a mistrial because of this answer being given. The court then sustained the objection to such statement of the prosecutrix and directed the jury not to consider such answer. After a few additional proceedings the court had the jury retired and announced the following ruling on this matter to attorneys: "The Court: You can prove any testimony with reference to her physical condition on the issue of force, Mr. Hamilton, but I will not permit any testimony about what Melvin Hickman did in the pasture, but I will allow testimony about her physical condition or the condition of her mind, and I think that would go, at least to some extent, as to her mental and physical condition."

It appears that appellant desired to use the effect of prosecutrix's subsequent trouble with his brother Melvin in order to account for her hysterical condition at Mr. Alexander's, yet he objected to such being proven before. It is also evident that the court respected his wishes in the matter and instructed the jury to disregard the answer of the witness, voluntary as it was, in so far as it related to the fight with Melvin. We think the presence of this bill evidences the correctness of our ruling on bill No. 1, and that the ruling of the trial court herein would relieve this matter of any error, if such is evidenced by this bill.

The objections and exceptions to the court's charge are not signed by the trial court. However a casual inspection of the charge impresses us with the clarity and completeness thereof.

This appellant faces a charge herein that can be supported either as a rape under the age of consent, provided there be previous chastity, as well as a rape by force without consent. True it is that prosecutrix herself furnished the testimony that she had previously been the victim of a forced act of intercourse, but the same witness showed that such previous act was one by force, and the perpetrator thereof had suffered a conviction, therefor. We held in Coots v. State, 7 S. W. (2d) 539: "* * * If under the circumstances of this case prosecutrix had been raped by force prior to appellant's criminal act, such prior act of intercourse would not have constituted a defense to appellant. * * " In fact it would be a peculiar

doctrine should we hold that a woman who had been the victim of an unlawful rape by force should thereafter, on such an account, be termed an unchaste person. Appellant himself brought out the incident of a previous rape upon this prosecutrix, and did not endeavor to contradict her testimony relative to the character of such attack. The witness was shown to have just passed her sixteenth birthday, and she was therefore under the age of consent, and if chaste, then consent or not would have no bearing on appellant's guilt.

The only testimony that would go to show the unchastity of this girl was that of Dr. Hughes, who said he examined her private parts on the next day after this complained of occurrence and found this rubber in her vagina; he testified that judging from the relaxed condition of these muscles he would say that she had had previous acts of intercourse other than the ones she testified about. Of course he could not know, but only gave his opinion based largely upon the ease with which he had inserted a speculum into her parts. This matter of previous chastity was submitted to the jury in the court's charge, and they were told that if they believed, or had a reasonable doubt thereof, that the prosecutrix was unchaste at the time of the alleged act, and that such act was committed with her consent, to acquit the defendant. The court also charged the jury that a chaste woman was one who had never with her consent had carnal intercourse with a man. The jury evidently took these instructions into consideration in arriving at their verdict herein. In our judgment the facts are sufficient to support the verdict on either theory of the case. Appellant testified that he had intercourse with this girl, that he was drunk, and that she gave her consent, telling him of several other persons who had also obtained carnal favors from her. The State produced three of these persons, all of whom denied that they had done so. Unquestionably this girl had something the matter with her, as shown by the testimony of the Alexanders. She was scratched and bruised, and her clothing was filthy, and there was evidence of a struggle under the bridge where the act took place. She then finally enlarged herself from appellant's custody, was left in a pasture by appellant ten or twelve miles from her home, and finally obtained assistance at the doorstep of a stranger. Appellant was bound to have known her immaturity by looking at her; he took a chance, and the jury have fixed the penalty. We see no reason to disturb it, not finding any error evidenced herein.

The judgment is affirmed.

ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

Appellant urges in his motion for rehearing that the facts are not sufficient to support a conviction for either rape by force or by consent upon a woman under eighteen years of age, it being the contention that the evidence shows prosecutrix was over fifteen years of age and was not a chaste female.

It may be admitted that all the issues of fact suggested were raised by the evidence. We find that all of said issues were properly submitted to the jury. Appellant's motion turning upon the facts involved has made it necessary to review the evidence in all its details. This we have done. The evidence upon the pivotal issues is such that a more favorable verdict to appellant would have found support, but for this court to disturb the present verdict would result in substituting our judgment on fact issues for that of the jury. The verdict before us finds support in the evidence introduced on the trial. Under the conditions mentioned we do not feel warranted in disturbing the judgment of the lower court.

Appellant's motion for rehearing is overruled.